UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FRANCISCO RAMIREZ ZAMORA, ) Case No. ED CV 10-1607 JCG
        Plaintiff, )
        v. ) **MEMORANDUM OPINION AND ORDER**
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
        Defendant. )

## I.

## **INTRODUCTION AND SUMMARY**

On October 20, 2010, plaintiff Francisco Ramirez Zamora ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 1.]

On April 27, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 11, 12.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is substantial evidence in the record, taken as a whole, to support the decision of the

Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 50 years old on the date of his administrative hearing, has completed the sixth grade. (*See* Administrative Record ("AR") at 58, 159, 351.)

On August 14, 2006, Plaintiff protectively filed for DIB and SSI, alleging that he has been disabled since July 29, 2005 due to a lower back injury. (*See* AR at 45, 46, 47, 58, 68, 333.)

On July 21, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 351-72.) The ALJ also heard testimony from Sandra Fioretti, a vocational expert ("VE"). (*Id.*) An interpreter was present to assist Plaintiff at the hearing. (*Id.*)

On September 30, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 18-25.) Applying the familiar five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has engaged in substantial gainful activity since his alleged onset date. (*Id.* at 20.) In particular, the ALJ found that Plaintiff's "earnings records reflect[] $13,539 for 2007." (*Id.*) However, the ALJ found that Plaintiff "has not otherwise engaged in substantial gainful activity since the alleged onset date." (*Id.*)

At step two, the ALJ found that Plaintiff suffers from severe lumbar sprain/strain. (AR at 20.)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairment, either individually or in combination, met or medically equaled the severity of any listing set forth in the Social Security regulations.[1] (AR at 21.)

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that he can perform light work "with no work on unprotected heights, [and] limited to occasional postural activities." (AR at 21 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform his past relevant work as a construction worker. (AR at 23.)

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including bench assembler, inspector, and small products assembler. (AR at 24 (bold omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 19, 25.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 5-6, 10.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

*Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## ISSUES PRESENTED

Five disputed issues are presented for decision here:

1. whether the ALJ properly evaluated the opinions of Plaintiff's treating physicians, (*see* Joint Stip. at 18-19);

2. whether the ALJ properly translated the opinions of Plaintiff's treating physicians from their workers' compensation context, (*id.* at 11-12);

3. whether the ALJ properly assessed Plaintiff's RFC, (*id.* at 15-16);

4. whether the ALJ properly assessed Plaintiff's credibility, (*id.* at 3-5); and

5. whether the ALJ properly concluded, at step five, that Plaintiff could perform other work. (*Id.* at 25-26.)

The first two issues are related. Accordingly, the Court addresses the first two

arguments collectively before turning to the remaining issues.

# V.

# **DISCUSSION AND ANALYSIS**

A. <u>Evaluation of the Medical Evidence</u>

Plaintiff makes two interconnected arguments. First, he contends that the ALJ failed to indicate "what weight he assigned to the opinion of [Guy H. Gottschalk, M.D. ("Dr. Gottschalk")]" and Max H. Matos, M.D. ("Dr. Matos"), both of whom treated Plaintiff in the context of his workers' compensation claim. (Joint Stip. at 18-19.)

Second, Plaintiff maintains that the "ALJ failed to indicate that he recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating" the opinions of Dr. Gottschalk and Dr. Matos. (Joint Stip. at 12.)

    1.    <u>The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject a Treating Physician's Opinion</u>

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure

and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036. "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted).

The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

2. The ALJ Properly Evaluated the Medical Evidence

The Court is persuaded that the ALJ properly evaluated the medical evidence and his opinion is supported by substantial evidence. This Court's decision is grounded on four reasons.

First, contrary to Plaintiff's assertion that the ALJ did not indicate "what weight he assigned to the opinion of Dr. Gottschalk" and Dr. Matos, (Joint Stip. at 18, 19), the ALJ properly assigned minimal weight to both opinions because they were not supported by the objective evidence. (AR at 22); *see Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

For instance, Dr. Gottschalk noted that Plaintiff "has a problem with gait" and "requires the routine use of a cane." (AR at 200.) Similarly, Dr. Matos opined that Plaintiff's "[w]alking tolerance is 10 minutes," "[s]itting tolerance is 15 minutes," and his "[s]tanding tolerance is 20 minutes." (*Id.* at 253.) However, the record is replete with evidence that Plaintiff did not have difficulty walking, standing, or with his gait on a consistent basis. (*See, e.g., id.* at 124-27 (treatment note, dated August 30, 2005, reporting "patient was able to walk without difficulties with preserved automatic arm swing[, h]eel and toe walking was intact[, and t]andem gait was normal"), 138-40 (evaluating physician report, dated October 6, 2006, indicating that Plaintiff "used no assistive devices to ambulate," his "gait was normal," "walked on tiptoes and heels without difficulty" and finding "[t]here was a full range of motion of the cervical spine"), 151-52 (evaluating physician report, dated March 3, 2008, indicating Plaintiff utilized "a cane in his right hand, but did not appear to bear any significant weight on the cane" and "appeared not to need it walking around the examination room"), 227-28 (supplemental report from Dr. Matos, dated October 25, 2007, stating that Plaintiff's "[g]ait is normal heel to toe").)

Second, the ALJ properly discounted Dr. Gottschalk's opined limitations based on the overall conservative treatment Plaintiff received for his back impairments. (AR at 22 (ALJ noting that Plaintiff was "merely taking Tylenol and Advil" and "was treated conservatively")); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician who prescribed conservative treatment). The ALJ's reason is supported by substantial evidence. On July 23, 2008, Dr. Gottschalk reported that Plaintiff "is currently taking Tylenol Extra Strength and Advil." (AR at 212-15; *see also id.* at 151 (consultative orthopedist note, dated March 3, 2008, indicating Plaintiff's "[c]urrent medication is Tylenol").) On April 10, 2009, following a referral by Dr. Gottschalk to a pain management consultation, Plaintiff was prescribed "cautious[] exercise by walking and stretching regularly" and was reported to have "medication for his

pain." (*Id.* at 182-83.) Although Plaintiff is "awaiting the results of [a] lumbar spine ultrasound, which was requested" to determine if Plaintiff would be approved for surgery by his insurance company, he has had no surgeries for his back impairments, nor has his request been approved. (*See id.* at 151, 183, 357-58.)

Third, the ALJ properly assigned more weight to the opinions of treating orthopedic surgeon Daniel Kharrazi, M.D. ("Dr. Kharrazi"), evaluating orthopedic surgeon William C. Boeck, Jr., M.D. ("Dr. Boeck"), and evaluating neurologist Gregory B. Kirkorowicz, M.D. ("Dr. Kirkorowicz"). (AR at 22.)

From July 28, 2005 through June 14, 2007, Dr. Kharrazi provided treatment for Plaintiff as his workers' compensation designated primary treating physician. (*See* AR at 129-37, 262-309.) On September 7, 2006, Dr. Kharrazi found Plaintiff to be a "well-developed, well-nourished male in no acute distress, ambulating without difficulty." (*Id.* at 130.) On June 14, 2007, Dr. Kharrazi found that Plaintiff suffered from a "[d]ecreased range of motion and tenderness of the lumbar spine," and determined that Plaintiff "has reached a plateau in his recovery." (*Id.* at 263.) Dr. Kharrazi concluded that Plaintiff should be restricted from "heavy lifting" and "flexion or extension at the lumbar spine" and avoid "prolonged bending and stooping," but did not opine any further limitations. (*Id.*) Accordingly, the ALJ properly accepted Dr. Kharrazi's treating opinion over Dr. Gottschalk's opinion. *Magallanes*, 881 F.2d at 750 ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony.").

Further, both Dr. Kirkorowicz and Dr. Boeck performed physical examinations of Plaintiff and found his RFC to be less restrictive than that determined by the ALJ. (*See* AR at 125, 152); *see also Magallanes*, 881 F.2d at 751 (An examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician.") (internal citation omitted). Dr. Kirkorowicz noted that Plaintiff suffered from chronic back pain, but he also indicated that

8

Plaintiff "is a relatively young and healthy person," the strength in his upper and lower extremities "reveal no atrophy or focal weakness," and his "[m]uscle tone was normal." (*Id.* at 126-28.) Dr. Boeck similarly found Plaintiff to be a "pleasant, healthy-appearing man who is alert, oriented, conversant, and cooperative." (*Id.* at 152.) He concluded Plaintiff has "moderate voluntary guarding with low back motions," but also "readily squats fully and gets up easily" and "readily comes to a seated position on the examining table." (*Id.*) Therefore, both opinions constitute substantial evidence in support of rejecting Dr. Gottschalk's opinion.

Fourth, the Court rejects Plaintiff's assertion that the ALJ failed to consider the differences between the workers' compensation and Social Security statutory schemes. In this case, although the ALJ did not explicitly translate Dr. Gottschalk's and Dr. Matos' findings into Social Security parlance, his reasoning can be gleaned from his opinion. Further, the ALJ expressly acknowledged that "disability" was a distinct concept for workers' compensation and Social Security benefits purposes. (*See* AR at 22.) Plaintiff presents no evidence that the ALJ failed to recognize that a distinction exists between the two schemes, or that the ALJ *incorrectly* interpreted any workers' compensation terminology used by Plaintiff's physicians. (*See generally* Joint Stip. at 11-12); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002) (ALJ's decision need not contain an explicit "translation," instead should indicate that the ALJ recognized the differences and took those differences into account when evaluating the medical evidence).

Thus, the ALJ properly considered the opinions of Dr. Gottschalk and Dr. Matos, which were provided in the context of Plaintiff's workers' compensation claim, and provided specific and legitimate reasons for rejecting those opinions. *Booth*, 181 F. Supp. 2d at 1105 ("ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion."). The Court finds that the ALJ's evaluation of the medical evidence is free of legal error and is supported by substantial evidence.

B.    RFC Determination

Plaintiff contends that "the ALJ concludes that [Plaintiff] has the [RFC] to perform light work and occasional posturals . . . but fails to identify which opinion he relied on for his conclusion." (Joint Stip. at 15-16.)

Plaintiff correctly asserts that the ALJ failed to "identify which opinion he relied on for his conclusion." This error was harmless, however, because the ALJ's RFC determination is consistent with Dr. Kharrazi's opinion and is more restrictive than the RFC opined by Dr. Boeck.[3/]  *See, e.g., Stoner v. Comm'r*, 239 Fed.Appx. 359, 360 (9th Cir. 2007).

The ALJ determined that Plaintiff can perform light work "with no work on unprotected heights, [and] limited to occasional postural activities." (AR at 21.) Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) & 416.967(b). "Frequent" means occurring from one-third to two-thirds of the time, or up to almost six hours in an eight-hour work day. Social Security Ruling ("SSR") 83-10,[4/] 1983 WL 31251, at *6.

Dr. Boeck determined that Plaintiff "can still lift and carry 50 pounds

---

[3/] Dr. Zirkorowicz did not provide any RFC findings describing Plaintiff's capabilities despite his limitations. (*See generally* AR at 124-28.)

[4/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

occasionally, 25 pounds frequently, stand and walk 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day." (AR at 155.) Dr. Kharrazi concluded that Plaintiff should be restricted from "heavy lifting, no flexion or extension at the lumbar spine, [and] avoid[] . . . prolonged bending and stooping." (*Id.* at 264); *see Carpenter v. Apfel*, 2000 WL 973681, at *3-*4 (N.D. Cal. 2000) (holding that examining physician's opinion that the claimant had "lost some capacity for lifting and bending, and was precluded from heavy lifting" under California workers' compensation guidelines supported the ALJ's finding that the claimant could perform light work); *Payan v. Chater*, 959 F. Supp. 1197, 1203 (C.D. Cal. 1996) (holding that the ALJ properly found that a claimant who was precluded from "heavy lifting" under the workers' compensation guidelines could perform medium work as defined by the Commissioner). Thus, the ALJ properly relied on both opinions, which comport with his RFC determination.

### C. Plaintiff's Credibility

Plaintiff argues that "the ALJ failed to provide clear and convincing reasons for discrediting [Plaintiff's] testimony." (Joint Stip. at 5.) Plaintiff maintains that "the ALJ relied on a lack of objective evidence; sit and squirm jurisprudence; took issue with [Plaintiff's] English speaking ability; and took issue with [Plaintiff's] earning[s] that [Plaintiff] denied[, but] . . . failed to consider [P]laintiff's daily activities; his work record; and testimony from physicians and third parties." (*Id.* at 4-5.)

#### 1. The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her

conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 18-25.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

### 2. The ALJ Properly Rejected Plaintiff's Subjective Complaints

The Court is persuaded that the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's credibility. Four reasons guide this determination.

First, the ALJ found that the objective medical evidence does not support Plaintiff's alleged degree of disability. (AR at 23; *see supra* § V.A.2.) A lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting Plaintiff's testimony. *Rollins*, 261 F.3d at 856-57. However, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. *Id.*

Second, the ALJ properly cited a number of inconsistencies between Plaintiff's testimony and conduct. *See Thomas*, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). The ALJ noted that Plaintiff insisted during the hearing that he does not speak any English, (*see* AR at 23, 354-55), even though an evaluating psychiatrist reported Plaintiff "speaks English and does not need an interpreter." (*Id.* at 157; *see also id.* at 68-70 (disability report completed by interviewer K. Taylor and observing no difficulty in understanding, talking, or answering questions during face-to-face interview).)

12

Further, the ALJ properly rejected Plaintiff's credibility based on his testimony denying he has worked since 2005. (AR at 23; *see also id.* at 360 (Plaintiff testifying that "I have not worked at all from 2005").) Despite his denial, the ALJ found that Plaintiff's pay records indicate he "earned over $13,000 in 2007 despite alleging disability since 2005." (*Id.* at 23; *see id.* at 66-67 (earnings record showing Plaintiff earned $13,539 in 2007).)

Moreover, although Plaintiff testified that he "can be seated for five to ten minutes" before he has to "get out of the chair," (AR at 363-64), the ALJ reported that Plaintiff "sat throughout the hearing for one hour in no apparent discomfort." (*Id.* at 23.) This is a clear and convincing reason for discounting Plaintiff's subjective complaints. *See Orn v. Astrue*, 495 F.3d 625, 639-40 (9th Cir. 2007) (while ALJ may not rely solely on personal observations to discount a claimant's testimony, he may use those observations in context with other indicators of claimant's credibility in evaluating testimony).

Third, the ALJ determined that Plaintiff "produced four almost completely full bottles of medications" at the hearing "suggesting either noncompliance or no need for that medication." (AR at 23); *see Bubion v. Barnhart*, 224 Fed.Appx. 601, 604 (9th Cir. 2007) (ALJ properly discounted plaintiff's credibility based on failure to follow prescribed treatment and plaintiff did not provide an acceptable reason for not following prescribed course of treatment). Although the ALJ did not note that Plaintiff also testified that the medication gave him "some side effects" and that his doctor advised him to "stop taking them," (AR at 357-59), Plaintiff's statement was not credible. He subsequently testified that the "reason for [the full bottles of medication] is I go to the doctor every four to six weeks and he gives me additional medication so what I'll do is I'll continue taking the one I had previously and . . . I have additional in my car, I always carry with [me] . . . [and] I carry with me some medications too because I have at the house, I have other bottles of medicine also that . . . are still unopened." (*Id.* at 359.)

13

Fourth, the Court concludes that the ALJ improperly discounted Plaintiff's subjective complaints based on his finding that there was "some manipulation of the evidence."[5/] (AR at 23.) Nevertheless, the Court finds that the ALJ's reliance on this reason was harmless error. *See Batson*, 359 F.3d at 1195-97 (9th Cir. 2004) (concluding that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but finding error harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record). "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks, alterations and citation omitted).

On this record, the ALJ's error does not "negate the validity" of his ultimate credibility finding and the ALJ's decision remains "legally valid, despite such error." *See Carmickle*, 533 F.3d at 1162 (internal quotation marks and citation omitted). As noted above, the ALJ's findings relating to Plaintiff's subjective complaints are supported by substantial evidence and they demonstrate that, to the extent the ALJ discounted Plaintiff's credibility, the ALJ did not do so arbitrarily. *See Rollins*, 261 F.3d at 856-57.

---

[5/] The ALJ discounted Plaintiff's subjective complaints because "a third-party report was submitted from [Plaintiff's] 'friend'" which was "in the same handwriting as that purportedly of [Plaintiff]." (AR at 23.) While the Court finds that the content in the third party function report completed by Plaintiff's friend mirrors the document completed by Plaintiff and the handwriting on both documents appears to be the same, the ALJ's determination that there was "manipulation of the evidence" is inconclusive, given that the Court will extend a gracious benefit of doubt to Plaintiff. (*Compare id.* at 96-103 (Plaintiff's adult function report) *with id.* at 88-95 (third-party function report).)

14

Thus, the ALJ provided legally sufficient reasons supported by substantial evidence for discounting Plaintiff's subjective complaints of pain.

D. Step-Five Determination

Plaintiff argues that the "ALJ found that the plaintiff had a marginal education," which "creates a conflict with the Reasoning Level of R-2" required by the jobs cited by the VE. (Joint Stip. at 25-26.)

There was no inconsistency between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). Each of the jobs identified by the VE has a reasoning level of two, which does not conflict with the ALJ's finding that Plaintiff possesses a marginal education. (*See* AR at 24 (ALJ relying on VE testimony that Plaintiff can perform the jobs of bench assembler, inspector, and small products assembler), 370 (VE's testimony)); *see also* DOT 706.684-042, 1991 WL 679055 (bench assembler description); DOT 559.687-074, 1991 WL 683797 (inspector and hand packager description); DOT 739.687-030, 1991 WL 680180 (assembler, small products II description).

"Marginal education" means "ability in reasoning, arithmetic, and language skills which are needed to do *simple, unskilled* types of jobs." 20 C.F.R. § 404.1564(b)(2) (emphasis added). A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables[.]" *See, e.g.,* DOT 706.684-042, 1991 WL 679055.

However, the DOT "employs a much more graduated, measured and finely tuned scale" than the Social Security regulations, which "separate a claimant's ability to understand and remember things and to concentrate into just two categories: 'short and simple instructions' and 'detailed' or 'complex' instructions." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) (citing 20 C.F.R. § 416.969a(c)(1)(iii)). A reasoning level of two is consistent with a limitation to simple, unskilled types of jobs. *See id.*; *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th

Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing work requiring more vigor and sophistication – in other words, Reasoning Level 2 jobs."); *Scott v. Astrue*, 2011 WL 1584144, at \*6 (C.D. Cal. 2011) (holding that a limitation to simple, repetitive tasks is consistent with reasoning level two jobs).

Accordingly, the Court finds that the ALJ did not err in relying on the VE's testimony because there was no conflict between the VE's testimony and the DOT.[6]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: July 22, 2011

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

---

[6] Defendant points out, and the Court agrees, that notably the "ALJ in this case did not ascribe any mental limitations to Plaintiff" and "Plaintiff's marginal education had enabled him to work as a construction worker I for fifteen years, and this job required level *three* reasoning, math, and language skills." (Joint Stip. at 27 (emphasis in original); *see also* AR at 369 (VE's testimony that Plaintiff's past relevant work was as a construction worker I)); DOT 869.664-014, 1991 WL 687601 (construction worker I description requiring reasoning level three).

16